TROY LAW, PLLC
41-25 Kissena Boulevard Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

Case No. 23-cv-03400

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
MICHAEL WILLIAMS, and
JONN GIBSON,
*on their own behalf and on behalf of others similarly situated*

                               Plaintiffs,
                                 v.
INSOMNIA COOKIES, LLC
   d/b/a Insomnia Cookies;
SERVE U BRANDS, INC.; and
SETH BERKOWITZ

                                   Defendants.
-----------------------------------------------------------------x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs MICHAEL WILLIAMS, and JONN GIBSON (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants INSOMNIA COOKIES LLC d/b/a Insomnia Cookies; SERVE U BRANDS, INC.; and SETH BERKOWITZ, and alleges as follows:

## INTRODUCTION

1.       This action is brought by the Plaintiffs MICHAEL WILLIAMS and JONN GIBSON, on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq*, and Missouri wage-and-hour laws arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.       Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and state wage-and-hour laws by

engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3. Plaintiffs WILLIAMS and GIBSON allege pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) liquidated damages, (3) prejudgment and post-judgement interest; and or (4) attorney's fees and cost.

4. Plaintiffs WILLIAMS and GIBSON further allege pursuant to Missouri Minimum Wage Law (MMWL), Mo. Rev. Stat. § 290.500 *et seq.,* and Missouri Common Law that he is entitled to recover from defendants (1) unpaid wages and overtime wages; (2) liquidated damages and/or (3) attorney fees and costs.

## JURISDICTION AND VENUE

5. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the Missouri state wage-and-hour claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) because Defendants conduct business in this District, and Defendants' principal place of business is in this District.

## PLAINTIFFS

7. Plaintiff MICHAEL WILLIAMS was employed by Defendants to work as a General Manager for Corporate Defendant INSOMNIA COOKIES at its stores in Missouri.

8. Plaintiff JONN GIBSON was employed by Defendants to work as a General Manager for Corporate Defendant INSOMNIA COOKIES at its stores in St. Louis Missouri.

## DEFENDANTS

*Corporate Defendants*

9. Defendant INSOMNIA COOKIES, LLC d/b/a Insomnia Cookies is a domestic business corporation organized under the laws of the State of New York with a principal address at 440 Park Avenue South, 14th Floor, New York, NY 10016.

10. INSOMNIA COOKIES, LLC d/b/a Insomnia Cookies is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

11. INSOMNIA COOKIES, LLC d/b/a Insomnia Cookies purchased and handled goods moved in interstate commerce.

12. SERVE U BRANDS, INC. is the parent company of INSOMNIA COOKIES, LLC.

13. SERVE U BRANDS, INC. is a domestic corporation incorporated in the State of New York with a principal address at 345 Seventh Avenue, Suite 1202, New York, NY 10001.

14. SERVE U BRANDS, INC. is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

15. SERVE U BRANDS, INC. purchased and handled goods moved in interstate commerce.

*Owner/Operator Defendants*

16. SETH BERKOWITZ the Owner and Founder, and CEO of INSOMNIA COOKIES, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at INSOMNIA COOKIES; SERVE U

BRANDS INC.

17. SETH BERKOWITZ had operational control over INSOMNIA COOKIES, LLC and over the activities of Plaintiffs and actively manages both corporations.

18. SETH BERKOWITZ was responsible for retail at all the Insomnia Cookies locations, obtaining FDA appoval and finding investors.

19. SETH BERKOWITZ had and has the authority to make decisions that concern the policies, operations and functions relating to Employement, Human Resources and Payroll at INSOMNIA COOKIES, LLC.

20. SETH BERKOWITZ acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with INSOMNIA COOKIES, LLC; and SERVE U BRANDS, INC.

## STATEMENT OF FACTS

### Corporate Defendant INSOMNIA COOKIES, LLC and its parent company SERVE U BRANDS, INC. Constitute an Enterprise

21. INSOMNIA COOKIES operates over 100 stores located across the United States.

22. Corporate Defendant INSOMNIA COOKOES share materials and workers, including Plaintiffs among their locations.

23. Upon information and belief, Corporate Defendants INSOMNIA COOKIES, LLC and SERVE U BRANDS, INC. constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners.

24. At all times relevant herein, Corporate Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of FLSA.

25. At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by INSOMNIA COOKIES, LLC and SERVE U BRANDS, INC.

## Wage and Hour Claims

26. Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

*Plaintiff MICHAEL WILLIAMS*

27. From on or about September 21, 2018 to January 6, 2021, Plaintiff MICHAEL WILLIAMS was employed by Defendants to work as a General Manager for Defendants in Missouri.

28. At all relevant times, Plaintiff MICHAEL WILLIAMS was scheduled to work for around forty five (45) hours a week.

29. At all relevant times, Plaintiff JONN GIBSON was promised to be paid forty (40) hours for regular hours, four (4) hours for scheduled store hours, and one (1) hour for contingencies.

30. At all relevant times, Plaintiff MICHAEL WILLIAMS was promised overtime for additional hours worked.

31. Between on or about November 15, 2021 and on or about November 27, 2021, Plaintiff in fact worked in excess of one hundred (100) hours a week, from 10:00 to 25:00 for 15 hours per day.

32. The reason was that Plaintiff was required to continue to work when nobody came in.

33.     31.     Between on or about November 15, 2021 and on or about November 27, 2021, despite working in excess of one hundred (100) hours a week, Plaintiff MICHAEL WILLIAMS was only paid forty five (45) hours for his work during this period of time.

34.     Furthermore, Defendants' own payroll system reflects their failure to—in addition and on top of the failure to compensate MICHAEL WILLIAMS for his work performed between on or about November 15, 2021 and on or about November 27, 2021—to pay Mr. WILLIAMS thirty three (33) hours of overtime hours plus thirty eight (38) hours of paid time off.

35.     To date, Defendants continue to owe Plaintiff both the overtime hours and the paid time off.

36.     From on or about September 21, 2018 to January 6, 2021, Plaintiff MICHAEL WILLIAMS was paid an hourly rate of Twenty Dollars and Nineteen Cents ($20.19) per hour.

37.     Plaintiff was promised additional pay for work performed in excess of forty five (45) scheduled hours (inclusive of one hour contingency).

38.     However, Plaintiff was in fact not paid for all hours worked.

39.     Defendants failed to pay overtime hours between on or about November 15, 2021 and on or about November 27, 2021.

40.     Defendants also improperly and unlawfully utilized Paid Time Off to pay portions of Mr. WILLIAMS' overtime.

41.     Plaintiff MICHAEL WILLIAMS tested positive for COVID-19 on or about December 7, 2020, a week after he stopped working at one of Defendants' store in Missouri, where he contracted the virus from.

*Plaintiff JONN GIBSON*

42. From in or around August 2018 to November 2021, excepting a six (6) month period during which Plaintiff JONN GIBSON did not work, Plaintiff JONN GIBSON was employed by Defendants to work as a General Manager for Defendants for its three stores in St. Louis, Missouri, namely: (1) 226 N Euclid Avenue, St. Louis, MO 63108, (2) 1136 Washington Avenue, St. Louis, MO 63101, (3) 6301 Delmar Boulevard, University City, MO 63130.

43. Plaintiff JONN GIBSON primarily worked at the 226 N Euclid Avenue, St. Louis MO 63108 location.

44. From time to time, Plaintiff JONN GIBSON would be asked to work at 1136 Washington Avenue, St. Louis MO 63101 and 6301 Delmar Boulevard, University City, MO 63130 when the store was short staffed or without a General Manager.

45. At all relevant times, Plaintiff JONN GIBSON was promised to be paid hourly, with an annual equivalent salary of $42,000.

46. At all relevant times, Plaintiff JONN GIBSON was scheduled to work for around forty five (45) hours a week. Plaintiff JONN GIBSON was promised to be paid forty (40) hours for regular hours, four (4) hours for scheduled store hours, and one (1) hour for contingencies. Plaintiff JONN GIBSON was promised overtime for additional hours worked.

47. However, at the start of Plaintiff JONN GIBSON's employment up and through the pandemic, Plaintiff was required to be on call 24 hours a day, and was expected to answer calls and emails.

48. At the start of Plaintiff JONN GIBSON's employment up and through the pandemic, While Plaintiff JONN GIBSON was paid one (1) hour extra per week for

contingencies, typically, Plaintiff spend between ten (10) to thirty (30) extra hours a week on his personal computer to help manage the store. Excepting the one (1) hour, work performed outside of the store was not recorded nor paid.

49. After the pandemic through the end of Plaintiff JONN GIBSON's employment, Plaintiff would frequently work between fifty (50) to sixty (60) hours a week.

50. Plaintiff JONN GIBSON was shorted approximately ten (10) to thirty (30) hours a week.

51. However, New District Manager K.P. Hoffman would frequently fail to add the recorded hours of overtime by claiming that he didn't know how to add the hours on paper.

52. Plaintiff JONN GIBSON was required to assist in helping the stores he managed delivery cookies when there was no driver.

53. On average, that would occur regularly for six (6) to seven (7) times a month.

54. Plaintiff was expected to drive his own car for the deliveries, to deliver fifteen (15) to twenty (20) deliveries, and drive approximately one hundred (100) miles.

55. Plaintiff received an additional Two Dollars ($2) per order for the deliveries performed.

56. Plaintiff JONN GIBSON was otherwise not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

## COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in

this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

58. Plaintiffs WILLIAMS and GIBSON bring their Missouri claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein (the "Class Period").

59. All said persons, including Plaintiff, are referred to herein as the "Class."

60. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

61. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

62. There are questions of law and fact common to the Class which predominate

over any questions affecting only individual class members, including:

  a.  Whether Defendant employed Plaintiff and the Class within the meaning of the state wage-and-hour laws of Missouri;

  b.  Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the state wage-and-hour laws of Missouri;

  c.  Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

  d.  Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods; and

  e.  At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

  *Typicality*

  63.  Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

  *Adequacy*

  64.  Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are

experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### *Superiority*

65. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

66. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/ Unpaid Wages
Brought on behalf of the Plaintiffs and the FLSA Collective]**

67. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

68. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full, and the similarly situated collective action members, for some or all of the hours they worked.

69. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

70. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
**[Violation of 29 U.S.C. §207(a)(1)—Failure to Pay Overtime Brought on behalf of Plaintiffs and the Collective]**

71. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

72. Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

73. Throughout their employment, Plaintiffs WILLIAMS and GIBSON were hourly workers who paid for forty five (45) hours of work, including one (1) hour of contingencies. That flat salary that did not include additional pay at time-and-a-half for any time that they worked more than forty (40) hours in that week.

74. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

75. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiffs overtime

## COUNT III.
**[Failure to Pay Wages in Violation of the Missouri Wage Payment Statute
Brought on behalf of Plaintiffs and the Class]**

76. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

77. Under Missouri Unpaid Wages Law, employers are obligated to pay wages in a timely fashion.

78. In addition to the unpaid wages that are owed, Plaintiffs are entitled to waiting time penalties under Missouri's wage and hour laws – Mo. Rev. Stat. § 290.110.

79. Defendants violated Missouri's wage and hour laws by willfully and intentionally not paying Plaintiffs and similarly situated employees promised wages required under Missouri law.

80. If a Missouri employer fails to pay all wages or overtime pay owed to a terminated employee, Missouri laws allows for recovery for statutory liquidated damages, including the employee's daily rate of pay for up to sixty (60) days.

## COUNT IV.
**[Violation of Missouri Code §290.505.1—Failure to Pay Overtime
Brought on behalf of Plaintiffs and the Class]**

81. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

82. At all relevant times, Plaintiffs and the Class have been entitled to the rights, protections, and benefits provided under Missouri's wage and hour laws – Mo. Rev. Stat. § 290.500 *et seq*.

83. Missouri's wage-and-hour laws regulate, among other things, the payment of overtime wages by employers, subject to limited exceptions not applicable here.

84. At all relevant times, Defendants was Plaintiffs' employer and Plaintiffs were

Defendants' employees, within the meaning of Missouri's wage and hour laws – Mo. Rev. Stat. §§ 290.500(3) & 4.

85. Pursuant to Missouri's wage and hour laws (Mo. Rev. Stat. § 290.505.1), employees like Plaintiffs and those similarly situated shall be compensated at a rate not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of forty (40) hours in a workweek.

86. Defendants violated Missouri's wage and hour laws by willfully and intentionally not paying Plaintiffs and similarly situated employees overtime wages required under Missouri law.

87. If a Missouri employer fails to pay all wages or overtime pay owed to a terminated employee, Missouri laws allows for recovery for statutory liquidated damages, including the employee's daily rate of pay for up to sixty (60) days.

## COUNT V.
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiff GIBSON and the Class]**

88. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89. Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

90. Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of her electricity delivery bicycle.

91. The conduct of Defendants, and the course of Defendant's conduct between the

parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

92.  Plaintiff purchased, maintained and repaired the electric bicycle at her own expense.

93.  Plaintiff performed these deliveries for the sole benefit of the Defendants.

94.  Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

95.  As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

96.  Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

97.  Defendants owe Plaintiff her overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## COUNT VI.
### [[Defendants' Failure To Pay To Delivery Experts Working "On The Road" Brought on Behalf of Plaintiff GIBSON and the Class]

98.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

99.  Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.

100.  Throughout the relevant period, Defendants required their delivery experts to

bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the *minimum* deductible costs of operating an automobile for business purposes.

101. For 2020, the IRS Standard Mileage Rate is $0.575 per mile.

102. For 2021, the IRS Standard Mileage Rate is $0.560 per mile.

103. For 2022, the IRS Standard Mileage Rate is $0.585 per mile.

104. For 2023, the IRS Standard Mileage Rate is $0.655 per mile.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent

to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

      d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and Missouri State Law;

      e)      An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

      f)      An award of unpaid minimum wage and overtime wages due under FLSA and Missouri State Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages;

      g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

      h)      The cost and disbursements of this action;

      i)      An award of prejudgment and post-judgment fees;

      j)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: April 23, 2023
       Flushing, New York

                        TROY LAW, PLLC
                        *Attorneys for the Plaintiffs, proposed FLSA*
                        *Collective and potential Rule 23 Class*

                        */s/ John Troy*
                        John Troy