**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL WILLIAMS, et al*., on their own behalf and on behalf of others similarly situated*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| INSOMNIA COOKIES, LLC, et al., | ) ) |
| Defendants. | ) ) |

No. 4:23-CV-669 RLW

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on a Motion to Compel Arbitration as to Plaintiff Williams, filed by Defendants Insomnia Cookies, LLC ("Insomnia Cookies"), Serve U Brands, Inc., and Seth Berkowitz (collectively "Defendants"). (ECF No. 35). Plaintiff Michael Williams opposes the Motion. Also before the Court is Defendants' Motion to Dismiss Plaintiff Gibson's Individual, Class, and Collective Action Claims (ECF No. 47), which Plaintiff Jonn Gibson opposes. Both motions are fully briefed and ripe for review. For the reasons that follow, the Court grants Defendants' Motion to Compel Arbitration as to Plaintiff Williams, and grants in part and denies in part Defendants' Motion to Dismiss as to Plaintiff Gibson.

### *I. Background*

Plaintiffs Michael Williams and Jonn Gibson allege they were employed by Defendants to work as General Managers for Insomnia Cookies in stores in the St. Louis area. In their First Amended Complaint (hereinafter "Complaint"), Plaintiffs assert wage and hour claims against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, <u>et</u> <u>seq.</u>,

the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500, et seq., and the Missouri Unpaid Wage Law ("MUWL"), Mo. Rev. Stat. § 290.110.

Plaintiffs bring the following claims against Defendants: Failure to Pay Overtime in violation of the FLSA, 28 U.S.C. § 207(a)(1) (Count I); Failure to Pay Wages in violation of the MMWL, Mo. Rev. Stat. § 290.110 (Count II); and Failure to Pay Overtime in violation of the MMWL, Mo. Rev. Stat. § 290.505.1 (Count III).  Plaintiff Gibson brings additional claims against Defendants for Breach of Implied Contract for Costs and Expenses of Electric Delivery Vehicle (Count IV), and "Failure To Pay To Delivery Experts Working 'On The Road'" (Count V). Plaintiffs bring individual claims and also seek to represent other similarly situated non-exempt employees in a collection action under the FLSA and a class action under Missouri's wage and hour laws.  Plaintiffs are seeking to represent a collective action under the FLSA in Count I, and a class action pursuant to Federal Rule of Civil Procedure 23 in Counts II and III.  Plaintiff Gibson is seeking to represent a class pursuant to Rule 23 in Counts IV and V.

In response to Plaintiff Williams's claims, Defendants filed a Motion to Compel Arbitration. Defendants contend Plaintiff Williams electronically signed an arbitration agreement during the onboarding process.  Plaintiff Williams disputes that he signed the agreement.

Defendants filed a Motion to Dismiss Plaintiff Gibson's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants argue Plaintiff Gibson fails to sufficiently allege a claim for overtime violations under the FLSA.  Defendants further argue Plaintiff Gibson fails to adequately allege Defendant Berkowitz is an "employer" within the meaning of the FLSA.  Additionally, Defendants make two alternative arguments.  In the event the Court finds Plaintiff Gibson has stated an FLSA claim, Defendants move that the Court dismiss for lack of personal jurisdiction any claims Plaintiff Gibson is bringing on behalf of employees who lived or worked outside of Missouri.  Alternatively,

2

should the Court dismiss Plaintiff Gibson's federal FLSA claim, Defendants urge the Court to decline to exercise supplemental jurisdiction over his remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

The Court will first take up the motion to compel arbitration.

## II.  Motion to Compel Arbitration as to Plaintiff Williams

Defendants move to compel arbitration under the Federal Arbitration Act ("FAA").  The FAA applies to contracts evidencing transactions "involving commerce." 9 U.S.C. § 2; Hoffman v. Cargill Inc., 236 F.3d 458, 461 (8th Cir. 2001).

Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA reflects a "liberal federal policy favoring arbitration."  AT&T Mobility LLC v. Conception, 563 U.S. 333, 339 (2011). "[C]ourts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms.  Id.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Lyster v. Ryan's Fam. Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).  Consequently, when there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration."  9 U.S.C. § 4.  The "court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute."  Pro Tech Indus., Inc.

3

v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004). See also Foster v. Walmart, Inc., 15 F.4th 860, 862 (8th Cir. 2021).

At issue is whether a valid agreement exists. The parties do not dispute that if it is enforceable, Plaintiff Williams's claims would be covered by the Mutual Arbitration Agreement (hereinafter "Arbitration Agreement"), which was filed as an exhibit in support of Defendants' Motion. (ECF No. 38, Ex. A). However, Plaintiff contends that he did not enter into the Arbitration Agreement.

Agreements to arbitrate are "'a matter of contract,' meaning that disputes are arbitrable only to the extent an agreement between the parties says so." Foster, 15 F.4th at 862 (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). In determining whether the parties agreed to arbitrate, the Court applies "state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). In this case, Missouri law governs whether the parties formed a valid agreement to arbitrate. For there to be an enforceable contract, Missouri law requires offer, acceptance, and consideration. See Baker v. Bristol Care, Inc., 450 S.W.3d 770, 774 (Mo. 2014) (en banc). "If a party fails to prove one of the elements of a breach of contract action, his claim fails." Midwest Bankcentre v. Old Republic Title Co. of St. Louis, 247 S.W.3d 116, 128 (Mo. Ct. App. 2008).

A.    **LEGAL STANDARD**

A motion to compel arbitration is properly analyzed under Fed. R. Civ. P. 12(b)(6), the motion to dismiss standard, or Fed. R. Civ. P. 56, the summary judgment standard. City of Benkelman, Neb. v. Baseline Eng'g Corp., 867 F.3d 875, 881 (8th Cir. 2017). If a party presents evidence outside the pleadings which is not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. Id. at 882. Here, both sides have submitted evidence

4

in support of their positions, therefore, the Court will apply the summary judgment standard under Rule 56. Ballou v. Asset Mktg. Servs., LLC, 46 F.4th 844, 851 (8th Cir. 2022). Summary judgment is proper if, viewing the record in the light most favorable to the nonmovant, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to [relief] as a matter of law." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted). Defendants bear the burden to prove a valid arbitration agreement exists, as they are seeking to compel arbitration in this case. See id.

### B.   FACTS PRESENTED

Defendants assert that Plaintiff Williams reviewed and assented to the Arbitration Agreement when he was hired. In support of this assertion, Defendants submit two declarations from Suzanne Toner, the Chief People Officer of Insomnia Cookies, as well as exhibits including metadata, screenshots, and a copy of the Arbitration Agreement, which appears to have been electronically signed by Michael Jay Williams.

In her declaration, Ms. Toner attests that at the time relevant to Plaintiff Williams's claims, all non-exempt employees were required to review and sign an alteration dispute resolution agreement with a class and collective action waiver provision as a condition of their hire. Ms. Toner states that during Plaintiff Williams's onboarding, Insomnia Cookies used a third-party digital portal, formally known as UltiPro, through which new employees reviewed and assented to various Insomnia Cookies' policies and agreements. She states that on his first UltiPro login, Plaintiff Williams created a password that only he could set or change. Through UltiPro, Plaintiff Williams then reviewed and accepted the Arbitration Agreement, along with numerous other documents. Ms. Toner asserts that UltiPro users must scroll through the entire document before

5

accepting it.  Ms. Toner asserts that according to metadata, Plaintiff Williams acknowledged that

he read, reviewed, and accepted the Arbitration Agreement by checking the "ACCEPT" field in

UltiPro.

      The Court carefully reviewed the metadata Defendants submitted in support of their

motion.  At 8:10 p.m. on September 17, 2020, user Michael Williams, under User ID fa583168-

7b25 7ef8 b481-14a832404259 at IP address 10.100.81.30, viewed and signed "Arbitration

Agreement 07.30.2020.".  (ECF No. 42, Ex. B at 1).  Around the same time, the same user, Michael

Williams with the same User ID and IP address, updated contact information, set up direct deposit,

and viewed and signed an I-9 and federal and state W-4 forms.  (Id.)  In addition, the same user,

Michael Williams with the same User ID and IP address, viewed and signed a number of "Policies

and Documents" in the following sequential order:

      8:06:35 p.m. – Attendance Policy;

      8:07:23 p.m. – Criminal Background Questionnaire;

      8:07:55 p.m. – Social Media Policy;

      8:08:28 p.m. – NDIAA;

      8:09:00 p.m. – GPS Policy and Acknowledgement;

      8:09:21 p.m. – Record Retention Policy;

      8:10:22 p.m. – Arbitration Agreement;

      8:10:48 p.m. – Employment Handbook; and

      8:11:58 p.m. – Insomnia Cookies Gluten-Free Training Summary

(Id.)

      In support of his position that he neither signed nor accepted the Arbitration Agreement,

Plaintiff Williams submitted his own declaration.  In his declaration, Plaintiff Williams attests that

on September 17, 2020, at approximately 11:00 a.m., David Gillham interviewed him for the General Manager job at a restaurant. According to Plaintiff Williams, Mr. Gillham offered him the position and later that day asked Williams to come into an Insomnia Cookies location to complete some electronic paperwork on a laptop.  Plaintiff Williams asserts that he arrived at the Insomnia Cookies location at about 7:40 p.m.  He asserts that he signed into UltiPro on a laptop and created a password.  When Plaintiff Williams logged into the portal, some of his contact information was already populated.  Plaintiff Williams entered additional contact information.  He also completed and e-signed an I-9, provided account information for direct deposit, and filled out and signed state and federal W-4 forms.  Plaintiff Williams attests that he then e-signed several documents by clicking boxes.

Plaintiff Williams remembers e-signing the following documents: an attendance policy, a criminal background questionnaire, a driver GPS policy, an employee handbook, and a gluten-free training summary.  Plaintiff Williams declares that he did not spend more than a minute looking at any of the documents, and that Mr. Gillham even urged him not to read through the documents, saying they were just formalities.  Plaintiff Williams attests that he did not see the Arbitration Agreement displayed, in spite of being on the lookout for one.  Plaintiff Williams does not dispute that the terms of the documents were displayed on UltiPro, but he contends that, aside from the criminal background questionnaire, he did not have to scroll through an entire document before hitting the ACCEPT button.

## C.    DISCUSSION

Electronically signed agreements are enforceable under Missouri law, and when presented with the issue of their validity courts "apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement."

Major v. McCallister, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009).  See also Foster, 15 F.4th at 863 ("Internet contracts, just like other agreements, require mutual assent between the parties"); Perficient, Inc. v. Palfery, No. 4:20-CV-618 MTS, 2022 WL 1102117, *5 (E.D. Mo. Apr. 13, 2022) (noting "Missouri courts and federal courts applying Missouri law have held 'click-to-accept' types of online agreements [ ] are enforceable").

Here, Defendants presented evidence that there was both an offer and acceptance of the Arbitration Agreement. Under Missouri law, "An offer is 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" LoRoad, LLC v. Glob. Expedition Vehicles, LLC, 787 F.3d 923, 928 n.3 (8th Cir. 2015) (quoting Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc., 770 S.W.2d 416, 419 (Mo. Ct. App. 1989)). Defendants submitted evidence that the Arbitration Agreement was presented to Plaintiff Williams to review through the UtilPro portal.  The evidence shows that a prospective employee viewing the document would understand that the offered terms would become binding upon acceptance, as the Arbitration Agreement refers to itself as a "Mutual Arbitration Agreement," and includes numerous phrases such as "the undersigned employee . . . and the Company agree"; "This Agreement is a condition of employment"; and "both Employee and the Company will be bound by its terms."  (ECF No. 38, Ex. 1 at 1).  The Arbitration Agreement also includes the following language in all capital letters and bond print:

> **THIS CONTRACT IS A BINDING ARBITRATION AGREEMENT WHICH MAY BE ENFORCED BY THE PARTIES.**
>
> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ, OR HAVE HAD THE OPPORTUNITY TO READ, THIS ARBITRATION AGREEMENT.  I AGREE TO THIS ARBITRATION AGREEMENT AND I UNDERSTAND THAT THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE AGREEMENT BE SUBMITTED TO**

**ARBITRATION PURSUANT TO THIS ARBIRATION AGREEMENT RATHER THAN TO A JUDGE AND JURY IN COURT.**

(Id. at 4).   Finally, Defendants presented evidence, through metadata and a copy of an electronically signed agreement, that Plaintiff Williams clicked on ACCEPT, thereby signing the Arbitration Agreement.   Defendants have discharged their burden of proving the Arbitration Agreement was offered, there was consideration, and Plaintiff Williams accepted it.

Plaintiff Williams, as the nonmoving party, must cite to materials in the record to demonstrate there is a dispute as to a genuine issue of material fact.  Fed. R. Civ. P. 56(c).  "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)).

Plaintiff Williams does not dispute the basic facts of what happened the evening of September 17, 2020 – that he logged into UltiPro, created a password, and was presented with various documents and policies to sign.  Plaintiff Williams even states that he remembers signing a number of specific documents between 8:07 and 8:12 p.m.  Notably, Plaintiff Williams does not dispute the validity of the metadata and in fact appears to rely on it in his own declaration when he refers to the exact time he viewed documents.  But more importantly, he does not deny that the Arbitration Agreement was viewed by user Michael Williams at 8:10 p.m., or that user Michael Williams clicked on a box to accept it.

That all said, Plaintiff Williams asserts in his declaration that he did not see the Arbitration Agreement displayed, but he offers no evidence to support a finding that someone other than

himself was acting as user Michael Williams at 8:10 p.m. when the Arbitration Agreement was viewed and accepted.  Plaintiff Williams does not assert that he left the room, or that Mr. Gillham took over the laptop between 8:07 pm. and 8:12 p.m.  Accepting Plaintiff's version of the facts as true, there is only one conclusion that can be drawn from the undisputed evidence: that Plaintiff Williams was logged on to UltiPro, he viewed a number of documents and policies, and at 8:10 p.m. he clicked on the ACCEPT button for the Arbitration Agreement.  In other words, the undisputed evidence establishes Plaintiff Williams signed the Arbitration Agreement.

Under Missouri law, a party who signs a document after having an opportunity to review its contents is, absent fraud or duress, bound by its terms.  Warren v. Paragon Techs. Grp., Inc., 950 S.W.2d 844, 846 (Mo. 1997) (en banc) ("[p]arties are presumed to read what they sign").  A party "may not avoid the consequences of the agreement on the basis that they did not know what they were signing." Bertocci v. Thoroughbred Ford, Inc., 530 S.W.3d 543, 553 (Mo. Ct. App. 2017).  "A signer's failure to read and understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract." Chochorowski v. Home Depot U.S.A., 404 S.W.3d 220, 228 (Mo. 2013) (en banc) (citing Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 509 n.4 (Mo. 2012)) (additional citations omitted).

Here, Plaintiff Williams does not argue that he lacked the capacity to sign a contract, but rather argues that Mr. Gillham "tricked" him into signing the Arbitration Agreement "unbeknownst" to him.  (ECF No. 43 at 3).  While there is evidence Plaintiff Williams did not read the Arbitration Agreement before clicking ACCEPT, there is no evidence he was tricked or was the victim of fraud.  The parties dispute whether a user of UltiPro was required to scroll through an entire document in order to click the ACCEPT button.  Defendants maintain that he did, while Plaintiff Williams attests that other than Criminal Background Questionnaire, he did not have to

scroll through documents before hitting the button.  He states, "The button was always there at the bottom of the window, below scrollable text."  (ECF No. 43 at 3).  But the Court finds this dispute of fact is immaterial and not determinative as to the issue before the Court.  While Plaintiff Williams denies having to scroll through the documents to sign them, he does not contend that he could not scroll through the documents.  In fact, he admits the text was "scrollable."  The undisputed evidence establishes Plaintiff Williams had an opportunity to read the Arbitration Agreement before accepting it.

Plaintiff Williams also asserts that Mr. Gillham urged him not the read the documents before signing them, and told him they were "just formalities."  (ECF No. 43 at 3).  Urging a party not to read a contract is materially different than preventing a party from reading.  It is undisputed that Plaintiff Williams could read the documents and scroll through them.  There is nothing in the record from which the Court could conclude Mr. Gillham prevented Plaintiff Williams from reading the terms of the Arbitration Agreement.

As for the assertion that Mr. Gillham told Plaintiff Williams the documents were just formalities, accepting this fact as true, the statement does not rise to the level of fraud required to void a contract.  Misrepresentations as to the character of a contract do not bar a finding of assent if the party had a reasonable opportunity to read the contract.  "The rule is that the one who signs a paper without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents."  Higgins v. Am. Car Co., 324 Mo. 189, 22 S.W.2d 1043 (1929) (enforcing contract where offeror told the plaintiff the release was a receipt, not a release, and the plaintiff signed it without readining it).  See also State ex rel. PaineWebber, Inc. v. Voorhees, 891

11

S.W.2d 126, 130 (Mo. 1995) (en banc) (when a contracting party is capable of reading the contract, statements by the other party are not usually a basis for voiding assent to the agreement); St. Joseph Lead Co. v. Fuhrmeister, 182 S.W.2d 273, 279 (Mo. 1944) (A party "cannot defeat the enforcement of a provision of a . . . contract by a mere showing that the other party misrepresented its legal effect or gave assurances that the same would not be binding or enforced"), and Restatement (Second) of Contracts § 163 (1981). The Court finds the undisputed evidence establishes Plaintiff Williams and Defendants entered into a valid agreement to arbitrate. The Court grants Defendants' motion to compel arbitration and will direct Plaintiff Williams to arbitrate his claims.

Defendants move that the Court compel arbitration and dismiss Plaintiff Williams's claims. As the FAA "generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it," the Court will stay these proceedings as to Plaintiff Williams pending the outcome of arbitration.  Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3).

### III.  Motion to Dismiss as to Plaintiff Gibson

The Court now turns to Defendants' Motion to Dismiss claims brought by Plaintiff Jonn Gibson.  Defendants argue Plaintiff Gibson fails to state a claim in Count I because his factual allegations are insufficient to state overtime violations under the FLSA.  Defendants further argue Plaintiff Gibson fails to sufficiently allege Defendant Berkowitz is an employer within the meaning of the FLSA.  Defendants make two additional alternative arguments.  First, Defendants argue if the Court finds Plaintiff Gibson states a claim under the FLSA, the Court should dismiss for lack of personal jurisdiction the claims of all members of any proposed collective class who lived or worked outside the State of Missouri. Alternatively, Defendants argue that if the Court finds Plaintiff Gibson has not stated a claim under the FLSA, it should decline to exercise subject matter

jurisdiction over Plaintiff Gibson's state law claims and dismiss this suit pursuant to 28 U.S.C. § 1367(c)(3).

## A.     RULE 12(b)(6) LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted).  The facts alleged must "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555–56; Fed. R. Civ. P. 8 (a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations.  Id.

## B.     DISCUSSION

### 1.  Plaintiff Gibson states a claim for overtime violations under the FLSA.

Defendants argue Plaintiff Gibson's allegations regarding FLSA overtime violations are factually deficient, because he fails to allege that he worked more than 40 hours in a particular week without being compensated for the overtime hours worked.  In support of their argument, Defendants cite Landers v. Quality Communications, Inc., 771 F.3d 638, 644-46 (9th Cir. 2014), as amended (Jan. 26, 2015). In Landers, the Ninth Circuit Court of Appeals held that to state an overtime claim under the FLSA, a plaintiff must allege that he or she "worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." Id. at 644-45.  Landers, however, is not controlling in the Eighth Circuit.

In Ash v. Anderson Merchandisers, LLC, the Eighth Circuit noted that "the proper pleading standard for FLSA claims is a matter of first impression in this circuit following Iqbal and Twombly[.]" 799 F.3d 957, 962 (8th Cir. 2015).  The Eighth Circuit observed that other circuits were applying "somewhat variable" pleading standards for FLSA claims but declined to address the issue, as it found the complaint deficient on other grounds.  Id. (comparing Landers, 771 F.3d at 644–45; Davis v. Abington Mem'l Hosp., 765 F.3d 236, 242–43 (3d Cir. 2014); and Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013); with Pruell v. Caritas Christi, 678 F.3d 10, 13-15 (1st Cir. 2012)).  Since its opinion in Ash, the Eighth Circuit has not established the proper pleading standard for FLSA claims.

Having reviewed the Complaint, the Court finds it need not decide which pleading standard applies, because even under the stricter standard found in Landers, Plaintiff Gibson has sufficiently pleaded facts to state a claim for overtime violations under the FLSA.

Plaintiff Gibson alleges he was employed by Defendants from around August 2018 to November 2021, excepting a six-month period during which he did not work.  Plaintiff Gibson alleges his schedule "ran for a total of around 45 hours per week."  (ECF No. 42 at 7).  Despite his schedule, "[he] in actuality spent an extra ten (10) to thirty (30) hours extra per week performing tasks for the defendants. This meant that [P]laintiff [Gibson] worked between fifty-five (55) to eighty-five (85) hours per week."  (ECF No. 42 at 7) (emphasis added).  Elsewhere in the Complaint, Plaintiff Gibson alleges that "after the pandemic and towards the end of his employment" he worked between 50 to 60 hours per week.  Plaintiff Gibson alleges he was never paid overtime for the hours he worked more than 45 hours, "including not being paid overtime for the weeks that plaintiff worked upwards to 85 hours."  (Id.)

Defendants contend Plaintiff Gibson alleges generalized overtime work only and has not pointed to a particular workweek in which he worked more than 40 hours without being compensated for overtime hours.  The Court does not agree.  Plaintiff Gibson alleges he was not paid overtime for the times that he worked more 45 hours a week, and aside from the six months he did not work, he always worked more than 45 hours a week.  In other words, Plaintiff alleges that he worked more than 45 hours every week – not just a particular week – but was not paid overtime for the hours he worked more than 45 hours.  These allegations are sufficient to state a FLSA overtime claim. Cf. Landers, 771 F.3d at 644 ("none of the plaintiffs alleged that the extra hours [scheduled] were in fact worked during a typical forty-hour workweek.").

Although Defendants criticize that Plaintiff Gibson provides only a range for the number of hours he alleges that he worked each week, they cite no case law requiring a plaintiff to plead the number of hours he or she worked every week in order to state a claim, and the Court will not require it here. See Landers, 771 F.3d at 646 ("Although plaintiffs in these types of cases cannot

be expected to allege with mathematical precision, the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages.") (quotation omitted). During discovery, Defendants may probe the veracity of Plaintiff's allegations regarding the number of hours he worked, and move for summary judgment should they find undisputed evidence that does not support his claims.

The Court finds Plaintiff Gibson has stated an overtime claim under the FLSA, and Defendants' Motion to Dismiss is denied on this issue.

2.  <u>Plaintiff Gibson fails to state an FLSA claim against Defendant Berkowitz.</u>

Defendants argue Plaintiff Gibson fails to state a claim against Defendant Berkowitz under the FLSA.  They argue Plaintiff Gibson has not alleged sufficient facts such that one could draw the reasonable inference that Defendant Berkowitz was Plaintiff Gibson's employer within the meaning of the FLSA.  Defendants maintain that Plaintiff Gibson added Defendant Berkowitz, a high-level executive, to this suit without alleging any facts to support the assertion that Berkowitz was his employer.

An individual may be held liable under the FLSA.  <u>Darby v. Bratch</u>, 287 F.3d 673, 681 (8th Cir. 2002); <u>see</u> <u>also</u> <u>Wirtz v. Pure Ice Co.</u>, 322 F.2d 259, 262–63 (8th Cir. 1963) (examining whether owner was employer within meaning of FLSA).  An employer is defined circularly in the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Eighth Circuit has not articulated a test for determining whether an individual is an employer under the FLSA, but has discussed factors to consider when examining the issue.  In <u>Wirtz</u>, the Eighth Circuit stated that a conclusion an individual is an employer under the FLSA would be "well supported" by "a combination of stock ownership,

management, direction[,] and the right to hire and fire employees." 322 F.2d at 263 (affirming district court's fact determination that owner was not an employer). The Eighth Circuit also requires direct involvement or active management – status as an owner or high-level executive with the power to control is not enough. Id. (noting that the owner "might have taken over and acted in the interest of [the company] in relation to an employee is beside the point as long as he did not do so") (cleaned up). To state an FLSA claim against an individual in this circuit, a plaintiff must allege the individual violated the statute. Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013) (affirming dismissal of individual defendant where the plaintiff failed to allege that the individual defendant controlled her compensation or made the decision not to pay her for accrued compensatory time). "This means, at a minimum, that an individual employer must be responsible in whole or part for the alleged violation to incur individual liability." Id. (quotation omitted).

Other circuits examining the issue have applied a four-factor test. See, e.g., Gray v. Powers, 673 F.3d 352, 355 (5th Cir. 2012). These courts look to whether the individual "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citing Williams v. Henagan, 595 F.3d 610, 620 (5th Cir. 2010)).

In the Complaint, Plaintiffs allege Defendant Berkowitz is the owner, founder, and CEO of Insomnia Cookies. There are allegations that Defendant Berkowitz "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records at Insomnia Cookies and Serve U Brands." (ECF No. 42 at 3-4). According to the Complaint, Defendant Berkowitz "had operational control over Insomnia Cookies LLC and over

the activities of Plaintiffs and actively manage[d] both companies." (ECF No. 42 at 4).  Plaintiffs allege Defendant Berkowitz "has and had the authority to make decisions that concern the policies, operations, and functions relating to [e]mployment, [h]uman [r]esources, and [p]ayroll at Insomnia Cookies, LLC."  (Id.)

The Court finds Plaintiff Gibson fails to allege sufficient facts from which the Court could plausibly find Defendant Berkowitz was an employer within the meaning of the FLSA. Plaintiff Gibson's allegations regarding Defendant Berkowitz amount to a recitation of the four-factor test employed in other circuits.  There are no factual allegation demonstrating Defendant Berkowitz was actively involved in the management or day-to-day operations of Insomnia Cookies stores, and none are specific to Plaintiff Gibson.  There are no allegations, for example, that Defendant Berkowitz controlled when Plaintiff Gibson worked, for how long he had to work, whether Plaintiff Gibson had to work overtime, or how much he was paid and for how many hours. Furthermore, there are no allegations Defendant Berkowitz logged or recorded Plaintiff Gibson's hours.  In fact, Plaintiff Gibson alleges his supervisor failed to properly log the hours he worked. In short, Plaintiff Gibson has not alleged facts linking Defendant Berkowitz to the alleged FLSA violations as required to state an FLSA claim against an individual. See Hill, 737 F.3d at 1216 (8th Cir. 2013).

Plaintiff has not alleged sufficient facts from which the Court can infer Defendant Berkowitz violated the overtime provisions of the FLSA.  The Court dismisses Plaintiff Gibson's FLSA claims against Defendant Berkowitz.

### C.   MOTION TO DISMISS FLSA CLAIMS BROUGHT ON BEHALF OF OUT-OF-STATE EMPLOYEES

Finally, Defendants move to dismiss for lack of personal jurisdiction any FLSA collective action claims Plaintiff Gibson seeks to assert on behalf of employees who are non-residents and/or have no connections to the State of Missouri.  Plaintiff Gibson opposes the motion and argues the Court should find there is specific jurisdiction over the claims of all employees who worked outside of Missouri.

Personal jurisdiction generally takes two forms: "'[G]eneral' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017) ("Bristol-Myers") (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)).[1] "General jurisdiction exists where a defendant is essentially at home in the forum state, whereas specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims, namely those that arise out of or relate to the defendant's contacts with the forum."  Bros. & Sisters in Christ, LLC v. Zazzle, Inc., 42 F.4th 948, 951 (8th Cir. 2022) (cleaned up).

The Supreme Court held that due process does not permit the exercise of specific personal jurisdiction over nonresident consumers' products liability claims against a nonresident defendant where there was no connection to the forum state.  Bristol-Myers, 582 U.S. at 263.  Under Bristol-

---

[1] Last term, the U.S. Supreme Court recognized an often-forgotten third method of obtaining personal jurisdiction over an out-of-state defendant.  The Court held that state statutes requiring out-of-state corporations to consent to personal jurisdiction in the state as condition of registering to do business in a state do not violate the Due Process Clause. Mallory v. Norfolk S. Ry. Co., 600 U.S. 122 (2023). Neither side asserts Defendants are subject to such a statute in Missouri.

Myers, the Court should exercise jurisdiction only if there is specific jurisdiction, that is "a connection between the forum and the specific claims at issue." Id. at 265. To exercise personal jurisdiction over Defendants, each of the claims must "arise out of or relate to the defendant's contacts with the forum," and there must be an "activity or an occurrence that takes place in the forum State." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025-26 (2021) (internal quotations and emphasis omitted).

Plaintiff Gibson does not argue, and there are no allegations that would permit the Court to find, the Defendants are subject to general personal jurisdiction in Missouri. Moreover, Defendants do not dispute there is specific personal jurisdiction over Plaintiff Gibson's claims. The question before the Court is whether there is specific personal jurisdiction over the claims of potential collective action members, who are neither residents of nor have connections to the State of Missouri.

The Eighth Circuit has extended the Supreme Court's holding in Bristol-Myers to collective action suits under the FLSA. Vallone v. CJS Sols. Grp., LLC, 9 F.4th 861, 865 (8th Cir. 2021). In the Eighth Circuit, "[p]ersonal jurisdiction must be determined on a claim-by-claim basis." Id. The fact that specific jurisdiction exists over one plaintiff's claims does not confer specific personal jurisdiction over other claims with no connections to Missouri. Id. There must be specific jurisdiction as to each member of the potential collective action. Id. Therefore, to the extent Plaintiff Gibson seeks to bring a collective action and assert claims on behalf of employees with no connections to Missouri, those claims are dismissed.

### IV. Conclusion

In sum, the Court finds there is undisputed evidence that Plaintiff Williams signed the Arbitration Agreement, which the parties do not dispute encompasses the claims he seeks to bring

in this case.  Therefore, the Court grants Defendants' Motion to Compel Arbitration and directs Plaintiff Williams to arbitrate his claims.  The Court will stay this action as to Plaintiff Williams.

With regard to Plaintiff Gibson, the Court finds the Complaint sufficiently alleges facts to state a claim for overtime violations under the FLSA.  However, Plaintiff Gibson fails to sufficiently alleges facts from which one could conclude that Defendant Berkowitz is an employer within the meaning of the FLSA.  Plaintiff Gibson's FLSA claims against Defendant Berkowitz are dismissed.  Because federal claims remain in this case, the Court retains supplemental jurisdiction over Plaintiff Gibson's state law claims.  To the extent Plaintiff Gibson seeks to bring a collective action and assert FLSA claims on behalf of employees with no connections to Missouri, those claims are dismissed for lack of personal jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and Dismiss Plaintiff Michael Williams's Claims is **GRANTED in part** and **DENIED in part.**  As set forth in this Memorandum and Order, Defendant's motion to compel arbitration is **GRANTED**.  This proceeding is **STAYED** pending arbitration <u>as to Plaintiff Michael Williams only</u>.  In all other respects, the motion is **DENIED.**  [ECF No. 35]

**IT IS FURTHER ORDERED** that the parties shall notify the Court within ten (10) days of the completion of the arbitration proceeding.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff Jonn Gibson's Individual, Class and Collective Action Claims is **GRANTED in part** and **DENIED in part.**  As set forth in this Memorandum and Order, (1) Plaintiff Jonn Gibson's claims against Defendant Seth Berkowitz under the Fair Labor Standards Act in Count I are **DISMISSED**, and (2) to the extent Plaintiff Gibson seeks to bring a collective action and assert claims under the Fair

Labor Standards Act on behalf of employees with no connections to Missouri, those claims are **DISMISSED**.  In all other respects, the motion is **DENIED.**  [ECF No. 47]


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  7th  day of February, 2024.