# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MICHAEL WILLIAMS, *on his own* )
*behalf and on behalf of others similarly* )
*situated,* et al., )
  )
          Plaintiffs, )      No. 4:23-CV-669 HEA
  )
      v. )
  )
INSOMNIA COOKIES, LLC, *et al.,* )
  )
          Defendants. )

## <u>OPINION, MEMORANDUM AND ORDER</u>

This matter is before the Court on Jonn Gibson's Motion to Dismiss Defendants' Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim. (ECF No. 116). Defendants Insomnia Cookies, LLC and Serve U Brands, Inc. (collectively, "Defendants") oppose the motion, which is fully briefed and ripe for review. For the reasons that follow, the Court will grant in part and deny in part the Motion to Dismiss.

## *I.    Background*

Plaintiffs Michael Williams and Jonn Gibson were employed as Store Managers in Insomnia Cookies stores in the St. Louis area. They first brought suit against Insomnia Cookies, LLC ("Insomnia Cookies"), Serve U Brands, Inc., and

Seth Berkowitz in the United States District Court for the Southern District of New York asserting wage and hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* and Missouri state law.  On May 23, 2023, the case was transferred to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404.

In response to Plaintiff Williams's claims, Defendants filed a Motion to Compel Arbitration, which the Court granted.[1]  (ECF No. 55).  Defendants filed a Motion to Dismiss Plaintiff Gibson's claims pursuant to Rule 12(b)(2) and (6), which was granted in part and denied in part.  (*Id.*)  The Court granted the motion to dismiss as to Plaintiff Gibson's claims against Defendant Berkowitz under the FLSA in Count I. (*Id.*)  It also granted the motion to dismiss to the extent Plaintiff Gibson was seeking to bring a collective action and assert claims under FLSA on behalf of employees with no connections to Missouri.  (*Id.*)

The parties consented to conditional certification of the FLSA claims for employees who worked as Store Managers in Insomnia Cookie stores in Missouri. On July 29, 2024, the Court entered a Stipulation Order, which provided for notice to be sent to potential members of the collective action.  As of today's date, no one has filed a consent opting into the collective action.

On August 28, 2024, the Court allowed Plaintiff Gibson to file a Second Amended Complaint, which he did on September 6, 2024.  Plaintiff Gibson brings

---

[1]This case was stayed pending arbitration as to Plaintiff Williams's claims only.  On August 30, 2024, Defendants and Plaintiff Williams filed a stipulation of voluntary dismissal.

the following claims against Defendants Insomnia Cookies, LLC and Serve U Brands, Inc.: Failure to Pay Overtime in violation of the FLSA, 28 U.S.C. § 207(a)(1) (Count I); Failure to Pay Wages in violation of the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.110 (Count II); and Failure to Pay Overtime in violation of the MMWL, Mo. Rev. Stat. § 290.505.1 (Count III); Breach of Implied Contract for Costs and Expenses of Electric Delivery Vehicle (Count IV); "Failure To Pay To Delivery Experts Working 'On The Road'" (Count V); Quantum Meruit (Count VI); and Unjust Enrichment (Count VII).  Gibson does not allege claims against Defendant Berkowitz, who is no longer a party to this suit.[2]  On September 20, 2024, Defendants answered the Second Amended Complaint.

On October 11, 2024, Defendants filed an Amended Answer to the Second Amended Complaint and for the first time, they asserted counterclaims against Gibson.  Defendants have since amended their pleadings and assert the following counterclaims against Gibson: Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq.* (Counterclaim I); Breach of Contract (Counterclaim II); Misappropriation of Confidential Information (Counterclaim III); Violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450, *et seq.*

---

[2]In his Second Amended Complaint, Gibson invokes federal question subject matter jurisdiction under 28 U.S.C. § 1331, as he is bringing a claim under the FLSA, a federal statute. Plaintiff avers that the Court has supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a).

(Counterclaim IV)*; and Violation of the Missouri Computer Tampering Act, Mo. Rev. Stat. § 537.525 (Counterclaim V). (ECF No. 114).

Gibson moves to dismiss the five counterclaims for lack of subject matter jurisdiction. Alternatively, Gibson argues Defendants fail to state claims against him. As jurisdiction is a threshold question, the Court will first address Gibson's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[3] *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010) ("[J]urisdiction is a threshold question and must be answered before all other questions.")..

## II.  *Subject Matter Jurisdiction*

### A. Legal Standard

 "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the [counterclaim] must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citation omitted)). When a facial challenge to jurisdiction is made, "a court restricts itself to

---

[3]In opposing Gibson's Motion to Dismiss, Defendants argue that the deadline in Fed. R. Civ. P. 15(a)(3) applied to his response to the Amended Counterclaims, and he filed his motion to dismiss out of time. Defendants urge the Court to deny the motion as untimely. Defendants filed their Amended Counterclaims on December 11, 2024. (ECF No. 114). Gibson filed his Motion to Dismiss, without leave of Court, 20 days later on December 1, 2024, (ECF 116). Gibson moves, in part, for dismissal for lack of subject matter jurisdiction. Jurisdictional matters can be raised at any point during litigation. See Fed. R. Civ. P. 12(h)(3). The Court finds Gibson's Rule 12(b)(1) motion to dismiss was not untimely. As for his motion to dismiss for failure to state a claim, the issues have been extensively briefed, and Defendants have identified no prejudice that would result should the Court consider the motion. Therefore, the Court overrules Defendants' objection and will take up on the merits Gibson's motion to dismiss for lack of subject matter jurisdiction and alternative motion to dismiss for failure to state a claim.

the face of the pleadings," and all of the factual allegations concerning jurisdiction are presumed to be true. *Osborn*, 918 F.2d at 729, n.6. The motion asserting a facial challenge will be successful if the pleading fails to allege an element necessary for subject matter jurisdiction. *Id.* Under a factual challenge "'no presumptive truthfulness attaches to the allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Titus*, 4 F.3d at 593 & n.1 (quoting, *Mortensen v. First Fed. Sav. & Loan Ass'n* 549 F.2d 884 (3d Cir.1977)). In this case, Gibson is making a facial challenge to jurisdiction.

## B. Discussion

Analytically, the Court will first address whether Defendants are asserting compulsory or permissive counterclaims. The distinction between compulsory and permissive counterclaims impacts the Court's analysis because supplemental jurisdiction extends to compulsory counterclaims automatically, *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 594 (8th Cir. 2001), while permissive counterclaims must provide an independent basis for the exercise of federal subject matter jurisdiction. *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson Cnty., Mo.*, 747 F.2d 1195, 1197 (8th Cir. 1984). *See also 6 Wright & Miller's Federal Practice & Procedure* § 1422, Permissive Counterclaims—Subject-Matter Jurisdiction Over Rule 13(b) Counterclaims (3d ed. 2025).

Gibson argues in his reply that the counterclaims are permissive, while Defendants have not taken a position on the matter.  A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1).  A permissive counterclaim is defined by exclusion, in that "any claim that is not compulsory" is permissive. Fed. R. Civ. P. 13(b).

Gibson alleges in his Second Amended Complaint that he worked overtime for Defendants, but they did not compensate him fully for the overtime.  He also alleges that he is owed money for expenses that he incurred while using a vehicle to deliver cookies.  Defendants allege in their Amended Counterclaims that Gibson agreed to be bound by a non-disclosure agreement, and he breached that agreement when he accessed, without authorization, the company's confidential, financial information and data, which were stored electronically, and took the information and data and retained them after he left the company.  In addition to breach of contract, Defendants claim Gibson misappropriated their trade secrets and tampered with their computer data and equipment.

Apart from the employer-employee relationship, Defendants' counterclaims do not have any factual commonality with Gibson's overtime claims or his claims regarding reimbursement of expenses.  Defendants' allegations have nothing to do with wages or reimbursement of expenses, but rather Defendants allege Gibson

6

breached an agreement concerning the handling of the company's confidential information. Even viewing the language of Rule 13(a) broadly, the Court concludes Defendants' counterclaims do not arise out of the same "transaction or occurrence" as Gibson's claims and, therefore, they are permissive not compulsory counterclaims. Fed. R. Civ. P. 13(a); *Tullos v. Parks*, 915 F.2d 1192, 1196 (8th Cir. 1990). S*ee also Morris v. Blue Sky Mgmt., LLC*, No. 11-00979-CV-DGK, 2012 WL 527936, at *3 (W.D. Mo. Feb. 16, 2012) (collecting FLSA cases).

As Defendants' counterclaims are permissive, there must be an independent basis for jurisdiction. The Court finds that there is an independent basis for the Court to exercise federal subject matter jurisdiction for at least one of the counterclaims. Counterclaim I arises under the Defend Trade Secrets Act ("DTSA"), a federal statute and, therefore, this Court has original, federal question jurisdiction over this counterclaim pursuant 28 U.S.C. § 1331.

As for the four additional counterclaims, they arise under state law. Defendants argue the Court has supplemental jurisdictional over these claims pursuant to 28 U.S.C. § 1367, based on the fact that it has original jurisdiction over Counterclaim I. Alternatively, Defendants argue the Court has diversity jurisdiction over its state-law counterclaims under 28 U.S.C. § 1332.

Section 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367 (a). The Eighth Circuit has stated that "to establish supplemental jurisdiction, the claims within the action must derive from a common nucleus of operative fact." *Auto-Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Rsrv.*, 495 F.3d 1017, 1024 (8th Cir. 2007) (cleaned up). The Court agrees with Defendants that the state-law counterclaims all concern the same alleged conduct as the alleged conduct underlying their DTSA claim – Gibson's alleged improper retention, misappropriation, and use of Defendants' confidential financial records. The Court finds that the four state-law counterclaims share the same nucleus of operative facts as the counterclaim over which the Court has original, federal jurisdiction. Accordingly, this Court may exercise supplemental jurisdiction over them.[4]  28 U.S.C. § 1367(a); *Auto-Owners Ins. Co.*, 495 F.3d at 1024.

In moving to dismiss for lack of subject matter jurisdiction, Gibson urges the Court to decline to exercise jurisdiction over Defendants' counterclaims. Citing to a number of FLSA cases, Gibson argues that there is the risk that the counterclaims will predominate over his FLSA claims, and allowing Defendants to go forward with their counterclaims undermines the goals of the FLSA. Setting aside that these cases are from other circuits or are not controlling authority, factually they are

---

[4]Finding the Court has original federal question jurisdiction over Counterclaim I and supplemental jurisdiction over Counterclaims II-V, the Court need not address whether diversity jurisdiction applies to these claims as well.

distinguishable because the counterclaims in these cases did not arise under federal law. *See Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983) (declining defendant the right to assert counterclaims for set-offs in FLSA collective action brought by Secretary of Labor); *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974) (same); *Herbst v. Ressler & Assocs., Inc.*, No. 4:13-CV-2327 CAS, 2014 WL 4205294, at *4 (E.D. Mo. Aug. 22, 2014) (declining to exercise supplemental jurisdiction over the defendant's state law counterclaims); *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1020 (N.D. Ill. 2009) (same). Gibson has cited no case in which a federal court declined to exercise jurisdiction over a counterclaim that arose under federal law, in other words over which the court had original jurisdiction. The Court will deny Gibson's motion to dismiss Defendants' counterclaims for lack of subject matter jurisdiction.

### III.    Motion to Dismiss Counterclaims for Failure to State a Claim

#### A. Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must

"raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555–56; Fed. R. Civ. P. 8 (a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. *Iqbal*, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.*

## B. Factual Allegations

The Counterclaims contain the following factual allegations: At different points from approximately August 29, 2017, to about October 29, 2021, Gibson was employed as a Store Manager at the Insomnia Cookies Euclid Avenue Store. As a condition of his employment, Gibson signed a non-disclosure agreement ("NDA"). The NDA prohibited disclosure of documents and information defined by the NDA as "Confidential Information." (ECF No. 114 at 23). The NDA further provided that

Confidential Information can only be used in the performance of duties, and that Confidential Information "will not [be] used … directly or indirectly" for Gibson's personal benefit.  (*Id.*)  Gibson also agreed that upon his separation from employment, he would "immediately return or destroy all materials … containing, summarizing, abstracting or in any way relating to the Confidential Information." (*Id.*)

Gibson signed the NDA when he was hired on August 10, 2017.  He also signed a "Form of Acknowledgment" upon the termination of his employment in which he reaffirmed his obligations under the NDA and his continued compliance.

Sometime during his employment, "[u]pon information and belief, [Gibson] knowingly and without authorization obtained [Insomnia's financial records] through and/or from the computer located at the Euclid Avenue Store."  (ECF No. 114 at 28).  Specifically, "[Gibson] accessed and obtained the [f]inancial [r]ecords from Insomnia Cookies' internal electronic document systems accessible through or otherwise connected to that computer terminal."  (*Id.*)  Defendants allege Gibson's duties as the Store Manager were unrelated to these financial records, and that Gibson was aware he did not have authority to access, let alone download, possess and/or retained the records.

Defendants allege that the financial records were "43 pages of detailed financial forecasting reports for over 170 Insomnia Cookie stores located in multiple states nationwide in addition to sales charts from varying points in 2020 for many of

the same stores." (ECF No. 114 at 27). Defendants further allege that the documents were Confidential Information as defined by the NDA in that they contained sensitive sales data, financial outlooks, and business strategies that would be valuable to a competitor, and that Gibson has harmed the company by exposing it to "substantial financial exposure and risk." (*Id.*). There are no allegations that Gibson used or disclosed the documents, or the Confidential Information contained therein, aside from providing the documents to his attorney. Defendants further allege that they the learned that Gibson had taken and retained the confidential financial records on September 4, 2024, when Gibson produced the documents in response to a discovery request in this case.

### C. Discussion

#### 1. *Statutory trade secret claims*

In Counterclaims I and IV, Defendants allege violations of the DTSA and the Missouri Uniform Trade Secrets Act ("MUTSA"). The Eighth Circuit has noted that these two statutes are essentially identical and has instructed that they should be analyzed together. *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023).

##### a. Defendants sufficiently allege the required elements for claims under the DTSA and MUTSA.

Claims under the DTSA and MUTSA have three elements: (1) the existence of protectable trade secrets, (2) misappropriation of the trade secrets by the

defendant, and (3) damages or entitlement to injunctive relief. *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010); *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt.*, LLC, 422 S.W.3d 312, 320 (Mo. 2014) (en banc). "A 'trade secret' is information that 'the owner thereof has taken reasonable measures to keep ... secret' and that 'derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.'" *Ahern Rentals, Inc.*, 59 F.4th at 955 (quoting18 U.S.C. § 1839(3); Mo. Rev. Stat. § 417.453(4)).

Misappropriation is defined by the DTSA and MUTSA to consist of (a) "acquisition of a trade secret" by a person who knows or should know the secret was improperly acquired; or (b) "disclosure" or "use of a trade secret" of another without express or implied consent. 18 U.S.C. § 1839(5)(A) and (B). *See also* Mo. Rev. Stat. § 417.453(2). Improper acquisition of a trade secret is prohibited conduct that amounts to misappropriation under the statute. *Id.*; *see also CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 564 (8th Cir 2019) ("'Misappropriation' essentially means to acquire the trade secret of another by improper means and without the owner's consent."). Contrary to Gibson's assertion, misappropriation does not require disclosure or use. *Id.*

Under the two statutes, "improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy,

or espionage through electronic or other means," but it does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6); *see also* Mo. Rev. Stat. § 417.463(1).

Gibson argues that Defendants fail to allege a trade secret because they do not allege facts showing that they took sufficient measures to protect their information and data. The Court does not agree and finds Defendants sufficiently allege that they took reasonable measures to protect their confidential financial information and data, because employees such as Gibson were required to sign an NDA, and the employees acknowledged and reaffirmed their obligation to comply with the NDA upon their separation. *Ahern Rentals, Inc.*, 59 F.4th at 955. The Court also finds that Defendants sufficiently allege that the financial information and data Gibson purportedly took qualify as trade secrets. There are allegations that the information and data were not publicly available, that they contained sales projections and internal business strategies, and that the disclosure of the information and data to a third-party competitor could be used to target markets in which Insomnia Cookies has a presence. Defendants sufficiently allege that they "derive an economic benefit" from the information and data "not being readily known or ascertainable." *Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 819 (8th Cir. 2004).

As for the misappropriation element, Defendants allege "upon information and belief" that Gibson knowingly accessed and downloaded, without authorization,

14

documents from Insomnia Cookies internal electronic document systems through a computer at the Euclid Avenue Store.  Gibson argues that these allegations are insufficient because they are pleaded on information and belief.

The Eighth Circuit reversed a dismissal and held that "factual allegations pled on information and belief should not be summarily rejected under *Twombly* where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Ahern Rentals, Inc.*, 59 F.4th at 954.  Gibson argues that the facts in *Ahren Rental, Inc.* are distinguishable from the facts here, because the computer at issue in this case is in Defendants' sole custody and control. Gibson makes this statement summarily, and there is nothing in the pleadings that establishes who has control of the computer, or whether it even still exists.

Gibson did produce confidential financial documents that Defendants contend were not publicly available and were stored on their internal, electronic document systems, which could be accessed through a computer connected to those systems. In light of these allegations, the Court finds there is some factual basis for the inference that Gibson accessed the documents without authorization from a computer at the Euclid Avenue Store.  Furthermore, Gibson produced the documents.  How he came to possess them is chiefly within his ken.  The Court finds Defendants plead sufficient facts of misappropriation. *Ahern Rentals, Inc.*, 59 F.4th at 954.

In sum, Defendants plausibly allege the existence of protectable trade secrets and misappropriation of those trade secrets.  They have, therefore, stated a claim under both the DTSA and MUTSA.  *Id.; Farmers Ins. Exch. v. Jasper*, No. 4:23-CV-00406-SRC, 2023 WL 7181661, at *4 (E.D. Mo. Nov. 1, 2023).

### b. Gibson fails to establish Defendants' claim under DTSA is time-barred.

Gibson also argues that Defendants' claim under the DTSA is time barred because the documents at issue are from 2020, more than four years before Defendants filed their counterclaim.  Defendants respond that they did not discover the misappropriation until Gibson produced the documents on September 4, 2024 and, therefore, their claim is timely.

Gibson's argument that Defendants' DTSA counterclaim is barred by the statute of limitations is an affirmative defense, and the burden is on him to establish that the claim is time barred.  Fed. R. Civ. P. 8(c); *John R, Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).  In general, a motion to dismiss is typically not the proper vehicle to resolve whether a claim is barred by a statute of limitations.  *Id.*  But there are exceptions to this general rule.  A claim may be dismissed as time barred under a statute of limitations pursuant to a Rule 12(b)(6) motion to dismiss "if the complaint [or counterclaim] itself shows that the claim is time-barred." *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015); *Jessie*, 516 F.3d at 713 n.2.  A pleading

establishes the statute of limitations defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint [or counterclaim]." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (cleaned up).

The DTSA has a three-year statute of limitations.  18 U.S.C. § 1836(d).  More specifically, the three-year statute of limitations begins once the misappropriation of the trade secret "is discovered or by the exercise of reasonable diligence should have been discovered." *Id.*

Defendants allege that they learned of the misappropriation on September 4, 2024, which Gibson's attorneys produced the documents in discovery.  In arguing the claim is time-barred, Gibson points to no other facts on the face of the Amended Counterclaims that establish that Defendants knew about the misappropriation prior to this date.  He does argue, however, that Defendants should have known of the alleged misappropriation sooner.

As stated above, the DTSA's statute of limitations is triggered when "by the exercise of reasonable diligence [the misappropriation] should have been discovered." 18 U.S.C. § 1836(d).  Therefore, if there are allegations in the Counterclaims establishing that through the exercise of reasonable diligence Defendants should have discovered Gibson's alleged misappropriation prior to October 11, 2021 – three years before Defendants first asserted the counterclaim – the DTSA claim would be barred.

In his reply memorandum, Gibson faults Defendants for failing to explain how they had no idea Gibson had accessed the documents and downloaded them without authorization, and he implies, without factual or legal support, that they failed to exercise due diligence and investigate.  Whether a party exercised due diligence is a fact-intensive question that is not usually suited for a motion to dismiss.  *See Hines v. A.O. Smith Harvestore Prods., Inc*., 880 F.2d 995, 999 (8th Cir. 1989).  Turning to the facts alleged here, there is nothing in the Amended Counterclaims to suggest that Defendants had reason to suspect Gibson, a Store Manager, was accessing and taking their confidential, financial documents.   There are no allegations, for example, that Gibson had committed prior malfeasance against the company, that he did not obey company rules, or that he was leaving to work for a competitor.  Further, Gibson cites to no controlling authority, and the Court has found none, that holds a reasonably diligent employer must conduct an electronic forensic analysis of computer equipment when each employee leaves.  Gibson's argument is based on his conclusory assertion that Defendants should have done more to uncover the fact that confidential documents were downloaded and taken, but the Court finds there are no factual allegations in the Amended Counterclaims to suggest that Defendants failed to exercise due diligence and should have discovered Gibson's alleged misappropriation prior to September 4, 2024.  Gibson has not established that Defendants' DTSA claim is barred by the statutes of limitations based on the face of the Amended Counterclaim.

## 2. *Breach of contract*

In Counterclaim II, Defendants allege breach of contract.[5]  Under Missouri law, a breach of contract claim requires the following elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff."[6] *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (citing *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. Ct. App. 1997).

Gibson argues that providing Defendants with the documents during discovery does not amount to nonperformance or breach of the NDA.  He points to the fact that the documents were disclosed to Defendants themselves, and in any event, they were produced subject to the Confidentiality Stipulation Order entered by the Court.  Defendants respond that the breach was not the disclosure during discovery, but rather the breach occurred when Gibson accessed the documents without authorization and retained them in direct violation of the NDA.  Defendants further argue that Gibson breached the NDA by failing to return or destroy the documents at the end of his employment.  Reviewing the allegations in the Amended Counterclaims, the Court finds Defendants sufficiently allege breach of the NDA.

---

[5]In their briefs, both sides cite to Missouri law for the elements of a breach of contract claim, despite the fact the NDA specifies that it is to be interpreted under Texas law.  As the parties appear to agree on the choice of law, the Court will analyze the breach of contract claim under Missouri law.

Gibson also argues that Defendants fail to state claim for breach of contract, because Defendants do not adequately allege the element of damages.  He argues Defendants do not allege they suffered any damages.  In response, Defendants point to the fact that they allege Gibson's breach of the NDA has "harmed Insomnia Cookies by subjecting it to substantial financial exposure and risk."  (ECF No. 114 at 26).  They also note that the NDA provides that Gibson "understand[s] and agree[s] that if [he] breach[es] or threaten[s] to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm." (ECF No. 114 at 24).  Finally, Defendants argue that they allege the other elements of a breach of contract claim and, therefore, they are entitled to at least nominal damages, which is sufficient to meet the damage requirement.

In Missouri, "[n]ominal damages are available where a contract and its breach are established." *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. 1999) (en banc).  *See also Amalaco, LLC v. Butero,* 593 S.W.3d 647, 652–53 (Mo. Ct. App. 2019) (reversing lower court's dismissal of the landlord's claims "since [the plaintiff] has adequately pled claims for breach of contract against [the defendants], [the plaintiff] is entitled to seek nominal damages."); *Shirley's Realty, Inc. v. Hunt,* 160 S.W.3d 804, 808 (Mo. Ct. App. 2005) ("Nominal damages are available upon proof of the contract and its breach, regardless of whether actual damages have been proven.").  The Court finds Defendants sufficiently allege the elements of a claim for breach of contract, and they may be entitled to nominal

damages.  Gibson's arguments in support of dismissing Defendants' counterclaim for breach of contract are without merit.

### 3.  Misappropriation of Confidential Information

In Counterclaim III, Defendants allege a common law cause of action for misappropriation of confidential information.  In moving to dismiss, Gibson argues that the claim is precluded by the MUTSA, which he contends displaces other Missouri common law claims that provide civil remedies for misappropriation of confidential information or trade secrets. (ECF No. 117 at 16).  Defendants did not respond to Gibson's argument, and his motion to dismiss is granted as to Counterclaim III. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70 CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002) (finding MUTSA, and more specifically Mo. Rev. Stat. § 417.463.1, "displace[s] conflicting tort, restitutionary, and other laws . . .  providing civil remedies for misappropriation of a trade secret.").

### 4.  Tampering with Computer Date and Equipment

Finally, in Counterclaim V, Defendants allege Gibson violated the Missouri Computer Tampering Act ("MCTA").  The MCTA provides a civil cause of action to the owner or lessee of electronically stored data that is improperly accessed.  Mo. Rev. Stat. § 537.525.   A violation under the MCTA occurs when a person "knowingly and without authorization ... discloses or takes data ... residing or existing internal or external to a computer, computer system, or computer network;

or . . . receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection." *Anzaldua v. NE Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 843 (8th Cir. 2015). *See also* Mo. Rev. Stat. § 569.095.

Gibson argues that Defendants fail to state a claim under the MCTA because there are no allegations that he obtained or destroyed computer data and/or software without authorization, or that he disclosed Defendants' data. Defendants allege that Gibson, without authorization, accessed documents through a company computer; that he downloaded and took the documents, which contained financial data; and he retained the documents. Disclosure is not a required element to state a MCTA claim. The Court finds Defendants sufficiently allege a claim under the MCTA. *Anzaldua*, 793 F.3d at 843.

## IV.  *Conclusion*

The Court now finds that it does have subject matter jurisdiction over Defendants' counterclaims. While the counterclaims are permissive, there is independent federal question jurisdiction for Defendants' first counterclaim, which is brought under the DTSA, a federal statute. As for the remaining counterclaims, the Court has supplemental jurisdiction under 28 U.S.C. § 1367, because they are part of the same dispute or controversy as the claim under the DTSA. Gibson's motion to dismiss for lack of subject matter jurisdiction is without merit. As for Gibson's alternative motion to dismiss for failure to state a claim, the Court finds that Defendants plausibly allege facts to state claims under the DTSA, MUTSA,

MCTA and for breach of contract (Counterclaims I, II, IV, and V).  Defendants failed to respond to Gibson's argument regarding Defendants' common law claim for misappropriation of confidential information (Counterclaim III).  Gibson's Motion to Dismiss for failure to state a claim is granted as to Counterclaim III only.

Accordingly,

**IT IS HEREBY ORDERED** that Jonn Gibson's Motion to Dismiss Defendants Insomnia Cookies, LLC and Serve U Brands, Inc.'s Amended Counterclaims for lack of subject matter jurisdiction or, alternatively, for failure to state a claim is **GRANTED in part** and **DENIED in part**.  The motion is **GRANTED** to the extent that the Court dismisses Counterclaim III, Misappropriation of Confidential Information, for failure to state a claim.  In all other respects, the Motion is **DENIED.**  [ECF No. 116]

Dated this 23rd day of July, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE